7 F.3d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwight David TURNER, Defendant-Appellant.
 No. 92-5687.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: September 27, 1993.
Decided: October 12, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Frank W. Bullock, Jr., Chief District Judge. (CR-92-42-WS)
 David F. Tamer, Winston-Salem, North Carolina, for Appellant.
 Benjamin H. White, Jr., United States Attorney, Paul A. Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Dwight David Turner entered a guilty plea to conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846 (West Supp. 1993). He appeals his conviction, alleging error in the denial of his motion to sever his trial from that of co-defendant Jeffrey Mabe, and in the denial of his motion to suppress an inculpatory statement he made when he was arrested. He also appeals his sentence. We affirm.
 
 
 2
 Jeffrey Mabe's home was searched under a warrant in June 1991. Turner called while the search was going on, and spoke to an officer who said he was house-sitting for Mabe. Turner accepted this explanation, said he needed to "re-up" (get a new supply of drugs), and would be right over. When he arrived, he encountered narcotics detective Jerry Miller, who told Turner he was co-conspirator Rick Hayes's cousin. Turner said he needed an ounce of cocaine, and counted out $1300 in twenty-dollar bills, which he gave to Miller. He was then arrested.
 
 
 3
 Turner moved unsuccessfully to suppress the statements he made immediately after his arrest on the ground that they were the result of a custodial interrogation conducted before he was given a Miranda* warning. By later pleading guilty without reserving the right to challenge the denial of his suppression motion on appeal, Turner gave up his right to appellate review of the suppression issue. Tollett v. Henderson, 411 U.S. 258 (1973). We therefore do not reach it.
 
 
 4
 At the suppression hearing, Miller testified that after his arrest Turner asked what would happen to him and was told he would be taken before a magistrate. Miller then said that Turner volunteered, in the presence of several officers, that he also hated drugs, but was selling them because he had lost his job and had hit the bottom of the barrel. Miller testified that Turner also said he had previously wanted to be an informant, and that Mabe had money and drugs buried behind his house. Turner testified that he had not made any inculpatory statements, and had not sought to buy any drugs. He said the money he gave Miller was to pay off a debt he owed to Mabe. The district court found that Turner's testimony was not credible.
 
 
 5
 Turner also was unsuccessful in seeking a severance from Mabe on the ground that Mabe was charged with numerous firearms counts in which Turner was not implicated. We cannot find that the refusal to sever in this case was an abuse of discretion resulting in a miscarriage of justice, see United States v. Chorman, 910 F.2d 102 (4th Cir. 1990), particularly in light of Turner's guilty plea.
 
 
 6
 The probation officer recommended a base offense level of thirty-two, relying on the government's information from cooperating coconspirators that Turner had bought between 3.5 kilograms and five kilograms of cocaine from Mabe and co-conspirator Rick Hayes. United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(7) (Nov. 1991). Turner conceded at the sentencing hearing that the government could prove that amount, but argued that amounts he personally used should not be included in the sentence calculation. Turner's girlfriend testified that he was a heavy user of cocaine. The district court determined that quantities of cocaine which Turner may have used were to be included in determining the amount attributable to him as relevant conduct. We find no clear error in the district court's finding that 3.5 kilograms was attributable to Turner, even if he used some of it. Relevant conduct includes all acts of the defendant which were in furtherance of the offense, U.S.S.G.s 1B1.3(a)(1), or were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2).
 
 
 7
 We further find that the district court did not clearly err in making an adjustment for obstruction of justice under guideline section 3C1.1 based on its finding that Turner's testimony at the suppression hearing was inherently incredible and a misrepresentation to the court. This constituted a finding of perjury under United States v. Dunnigan, 61 U.S.L.W. 4180 (U.S. 1993). When a defendant has obstructed justice, a reduction in offense level for acceptance of responsibility is not justified except in extraordinary cases. U.S.S.G. § 3E1.1, comment. (n.4). This is not such a case.
 
 
 8
 Finally, the district court's decision to make no adjustment for minor or minimal role was not clearly erroneous. Turner was an important, long-term customer of Mabe and Hayes. He contributed $17,000 on one occasion toward the purchase of two kilograms of cocaine in Florida. Although not a leader, Turner had more than an insignificant, peripheral role in the conspiracy.
 
 
 9
 Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Miranda v. Arizona, 384 U.S. 436 (1966)